IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOSEPH RAMON CHAVEZ,

        Plaintiff,

vs.                                  Case No. 11-1004-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits, but finding that plaintiff was entitled to supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot,

considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to

determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On November 2, 2009, administrative law judge (ALJ) Michael A. Lehr issued his decision (R. at 10-18). Plaintiff alleges that he has been disabled since September 18, 2005 (R. at 10). Plaintiff is insured for disability insurance benefits through December 31, 2006 (R. at 12). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since September 18, 2005, his alleged onset date (R. at 12). At step

two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease (DDD), lumbar spine; left hip replacement (status post avascular necrosis); and asthma (R. at 12).  The ALJ further found that not until April 18, 2008 did the plaintiff have a severe impairment of depression (R. at 12). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 13).  After determining plaintiff's RFC prior to April 18, 2008 (R. at 13), the ALJ found at step four that plaintiff could not perform past relevant work (R. at 16).  At step five, the ALJ found that, prior to April 18, 2008, plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 16). Therefore, the ALJ concluded that plaintiff was not disabled prior to April 18, 2008 (R. at 17).

After determining plaintiff's RFC on and after April 18, 2008 (R. at 15), the ALJ found that plaintiff could not perform any past relevant work, or other work in the national economy on or after April 18, 2008 (R. at 16-17).  Therefore, the ALJ concluded that plaintiff was disabled as of April 18, 2008 (R. at 17).

**III. Did the ALJ err in finding that plaintiff's impairments did not meet or equal listed impairment 1.04A?**

At step three, plaintiff has the burden of demonstrating, through medical evidence, that his/her impairments meet all of

the specified medical criteria contained in a particular listing. Riddle v. Halter, 10 Fed. Appx. 665, 667 (10th Cir. March 22, 2001). An impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990). Because the listed impairments, if met, operate to cut off further inquiry, they should not be read expansively. Caviness v. Apfel, 4 F. Supp.2d 813, 818 (S.D. Ind. 1998).

The criteria for listed impairment 1.04A is as follows:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2011 at 460).

The ALJ provided the following explanation for finding that plaintiff's listed impairment did not meet or equal listed impairment 1.04:

> The record documents that the claimant does have a spine disorder, but does not have the pain, reflex, sensory motor deficits or the inability to ambulate effectively as

described in Medical Listing 1.04.[1]

(R. at 13).

Plaintiff has the burden to present evidence establishing that his impairments meet or equal a listed impairment. Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). In order for the plaintiff to show that his impairment matches a listing, plaintiff must meet "*all*" of the criteria of the listed impairment. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. Zebley, 493 U.S. at 530 (emphasis in original). Plaintiff concedes in his reply brief that "motor loss," defined as atrophy with associated muscle weakness or muscle weakness, does not appear in the medical records cited by plaintiff in his brief, and that expert medical opinion is necessary to ascertain if weakness or atrophy would be present (Doc. 14 at 4). If expert medical opinion was necessary to ascertain if one or more of the criteria were met in this case, it was plaintiff's burden to provide that evidence. Plaintiff has therefore clearly failed to meet his burden of providing evidence that his impairments meet all of the criteria of listed impairment 1.04A.

Plaintiff also argues that plaintiff's impairments equal listed impairment 1.04A (Doc. 14 at 4). Medical equivalence is

---

[1] The criterion of "inability to ambulate effectively" only appears in listed impairment 1.04C (2010 at 460).

defined in 20 C.F.R. § 404.1526(a,b)(2011 at 377-378). The ALJ reviewed the evidence and found that plaintiff's impairments did not meet or medically equal listed impairment 1.04 (R. at 13). Even though plaintiff has the burden of proving that his impairments either meet or equal a listed impairment, plaintiff cites to no medical opinion evidence or other evidence that states or indicates that plaintiff's impairments equal listed impairment 1.04A. In fact, plaintiff argues that listed impairment 1.04A "*may*" be equaled "*if*" properly examined by an objective medical expert reviewer (Doc. 14 at 4, emphasis added). Again, if expert medical opinion was necessary to ascertain if the listed impairment was equaled in this case, it was plaintiff's burden to provide that evidence. Plaintiff has therefore clearly failed to meet his burden of providing evidence that his impairments equal listed impairment 1.04A. The court finds that substantial evidence supports the ALJ's finding that plaintiff's impairments do not either meet or equal a listed impairment. See Pulliam v. Astrue, Case No. 09-1289-SAC (Aug. 2, 1010; Doc. 18 at 13).

Plaintiff also claims that the ALJ misrepresented plaintiff's description of his activities of daily living (Doc. 10 at 27-28). In his decision, the ALJ found that plaintiff's daily activities were "fairly normal" (R. at 14). The medical records from July 14, 2005, cited to by the plaintiff in his

brief (Doc. 10 at 27), and by the ALJ in his decision (R. at 14) states that plaintiff reported that he "can do his activities of daily living without any significant troubles" (R. at 257).

Plaintiff further argues that the evidence did not support the ALJ's assertion that plaintiff was able to play with his dog, which indicated a good ability to bend (R. at 14). Plaintiff asserts that he never stated that he had the ability to bend or to play with his dog (Doc. 10 at 29). However, in a statement signed by the plaintiff on September 7, 2008 (R. at 161-172), plaintiff indicated that he tossed the ball to the dog in the house (R. at 166), and that he played with his dog (R. at 169). Plaintiff also indicated that he could clean the bathroom, do the dishes and the laundry (R. at 167), although he indicated it takes him quite a while to do the laundry because it is painful and hard to lift wet clothes and bend over to put them in the dryer and then take them out of the dryer (R. at 172). Plaintiff thus indicated a limited ability to bend. The court finds that the evidence fails to establish that the ALJ misrepresented plaintiff's description of his activities of daily living.

**IV.  Did the ALJ err in finding that plaintiff's onset date was April 18, 2008?**

The ALJ found that there was insufficient evidence regarding the severity of plaintiff's depression from September 18, 2005, his alleged onset date, through December 31, 2006, the date

9

plaintiff was last insured for disability insurance benefits (R. at 12-13).  Psychiatric review technique forms filled out by R.E. Schulman, PhD., and Charles Fantz, PhD., both found insufficient evidence regarding the severity of plaintiff's depression for this time period (R. at 421-433, 441-453), although Dr. Schulman acknowledged that depression had been diagnosed in this time frame (R. at 433).  In the absence of any evidence contradicting these opinions, the court finds that substantial evidence supports the ALJ's finding that the evidence failed to establish that plaintiff's depression was severe on or before the date that plaintiff was last insured.

The ALJ determined that plaintiff did not have a severe impairment of depression until April 18, 2008 (R. at 12).  The ALJ relied on the report of Dr. Hackney, a psychologist, in making this finding (R. at 15).  Dr. Hackney tested plaintiff on December 8, 2008 and prepared a report (R. at 437-439).

The ALJ found that plaintiff protectively filed his application for Title XVI (supplemental security income (SSI) payments) on April 18, 2008 (R. at 10); the ALJ relied on a form signed by plaintiff on April 18, 2008 for interim assistance payments (R. at 107) as plaintiff's filing date for SSI payments. 20 C.F.R. § 416.340.  To be entitled to SSI benefits, plaintiff must show that he/she is totally disabled, but he/she cannot receive benefits for any period prior to the filing of his/her

application. Kepler v. Chater, 68 F.3d 387, 389 (10th Cir. 1995); 20 C.F.R. § 416.335. Thus, plaintiff cannot receive benefits prior to April 18, 2008.

The ALJ, as noted above, found that the evidence failed to establish that plaintiff's depression was severe prior to the date that plaintiff was last insured, which was December 31, 2006, and that she was not disabled as of that date. Since plaintiff applied for SSI benefits on April 18, 2008, the only relevant consideration for the ALJ was whether plaintiff had severe impairments and was disabled on or after April 18, 2008. The severity of her impairments after December 31, 2006 and prior to April 18, 2008 was irrelevant for purposes of receiving either DIB (disability insurance benefits) or SSI payments. For that reason, the ALJ did not err in finding that plaintiff did not have a severe impairment of depression until April 18, 2008 (the date she applied for SSI benefits; plaintiff cannot receive benefits prior to that date) and was disabled as of that date.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 30th day of December, 2011, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge